IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| INSTITUTO MEXICANO DEL SEGURO SOCIAL, | )<br>)<br>) |
| Plaintiff, | ) Civil Action No. |
| v. | )<br>) 3:20cv99 |
| ZIMMER BIOMET HOLDINGS, INC., | )<br>)<br>) |
| Defendant. | ) |

-FILED-
JAN 30 2020
At_____M
ROBERT N. TRGOVICH, Clerk
U.S. DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

## IMSS' ORIGINAL COMPLAINT

The Instituto Mexicano del Seguro Social ("IMSS"), an agency of the Mexican government, complains of Zimmer Biomet Holdings, Inc. ("Zimmer Biomet") as follows:

### NATURE OF THE CASE

1. For years, Zimmer Biomet used bribery as an integral part of its world-wide marketing strategy. Zimmer Biomet conducted the extensive, international scheme from its home office in Warsaw.

2. Zimmer Biomet's conduct is well established. In 2012, before the merger of Biomet and Zimmer, Biomet entered into agreements with the Department of Justice and the Securities and Exchange Commission in which Biomet admitted its use of bribery in Argentina, Brazil and China and agreed to pay $22.8 million in fines and forfeitures for its illicit conduct in those countries.

3. Despite these agreements, Zimmer Biomet continued its illegal bribery. As a result, in early 2017, Zimmer Biomet entered into another deferred prosecution agreement with the Department of Justice and another settlement with the SEC. In both cases, Zimmer Biomet confessed

to organized bribery in Mexico and Brazil. In total, Zimmer Biomet paid $30.5 million in fines and forfeitures as a result of its admitted conduct.

4. Zimmer Biomet's bribery was not limited to foreign nations. In 2007, Zimmer and Biomet separately confessed to paying kickbacks to US physicians to sell its products and agreed to pay nearly $200 million in fines and forfeitures for their illegal conduct.

5. In Mexico, Zimmer Biomet paid bribes to illegally sell unregistered medical devices to IMSS, a decentralized agency of the Mexican government that purchases medical products provided to Mexican citizens by various agencies of the Mexican government, including IMSS itself.

6. If IMSS had known of the lack of registrations or the bribery, it could not have made any purchases from Zimmer Biomet. All of IMSS' contracts with Zimmer Biomet since at least 2008 are therefore voidable.

## JURISDICTION AND VENUE

7. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 (a)(4) because this action is between a foreign state (according to the Foreign Sovereign Immunities Act (the FSIA)) and a citizen of the United States.

8. This Court has venue pursuant to (1) 28 U.S.C. § 1391(b)(1) because Zimmer Biomet has its principal place of business in this District and (2) 28 U.S.C. § 1391(2) because a substantial part of the events and omissions giving rise to the claims presented herein occurred in this District.

## PARTIES

9. IMSS is the Mexican Social Security Institute, a decentralized agency of the United Mexican States. IMSS is therefore a "foreign state" pursuant to the FSIA, and its officials are covered by the Foreign Corrupt Practices Act.

10. Zimmer Biomet is a multinational corporation principally involved in the development, manufacture, and marketing of medical devices. Zimmer Biomet is headquartered in Warsaw, Indiana.

11. Zimmer Biomet is the successor to Biomet, Inc., also of Indiana. Zimmer Biomet has assumed all of the rights and obligations of Biomet, Inc.

12. Zimmer Biomet's registered agent for service of process is Corporation Service Company, 135 North Pennsylvania Street, Suite 1610, Indianapolis, Indiana 46204.

## Factual Background

*The Parties' Business Relationship*

13. IMSS is the main social-service agency of the Mexican government. IMSS was created in 1943 by order of the Mexican President, who continues to nominate IMSS's General Director.

14. IMSS provides health care services to tens of millions of Mexican citizens at hospitals that IMSS owns and operates throughout Mexico. The Mexican government funds IMSS through taxation and compulsory contributions. IMSS also manages the purchases of medical supplies for other Mexican governmental agencies, including the Instituto de Seguridad y Servicios Sociales de los Trabajadores del Estado (ISSSTE), Petroleos Mexicanos (Pemex), and the Mexican military.

15. IMSS is the appropriate agency to bring the claims presented herein.

16. Zimmer Biomet is an orthopedic medical device company. The company distributes its products both domestically in the United States and internationally in multiple countries.

17. In Mexico, Zimmer Biomet distributed its products through Biomet 3i Mexico, an indirectly wholly-owned subsidiary.

*Zimmer Biomet's International Bribery Scheme*

18. For years, Zimmer Biomet used bribes to sell its products to governmental agencies throughout the world, including within the United States and Mexico. Zimmer Biomet's conduct was international in scope and orchestrated from Zimmer Biomet's corporate officesn in Warsaw, Indiana. Zimmer Biomet utilized a similar scheme in at least the United States, Mexico, Brazil, China, and Argentina.

19. Zimmer Biomet's international bribery strategy has been established in actions brought by the DOJ and the SEC.

20. In 2012, Biomet entered into a deferred prosecution agreement with the Department of Justice and a settlement agreement with the SEC based on Biomet's illegal bribery in Brazil, China, and Argentina. Zimmer Biomet became bound by those agreements following the merger of Zimmer and Biomet in 2015. As part of its 2012 agreements, Biomet paid a $17.3 million fine to the DOJ and $5.5 million in disgorgement of illicit profits and interest to the SEC. Biomet also agreed to a number of internal remedial actions designed to prevent further violations of United States law, including the creation of an independent compliance monitor.

21. Despite its earlier confessions, the fines and disgorgements, and the purported compliance monitor, Zimmer Biomet continued to pay bribes to foreign government officials.

22. Accordingly, in 2017, Zimmer Biomet entered into another deferred prosecution agreement with the DOJ and another settlement with the SEC, this time for bribes paid from at least 2008 through 2013 in Mexico and Brazil.

23. Zimmer Biomet's use of bribes and kickbacks was not limited to foreign countries. Zimmer Biomet also utilized illicit payments to sell its products in the United States. Prior to their merger, Zimmer and Biomet separately admitted to utilizing the same illicit practices in the United States. Zimmer Biomet paid kickbacks to US physicians to make sales funded by the US government.

IMSS' ORIGINAL COMPLAINT—page 4

As a result of this domestic conduct, Zimmer and Biomet paid nearly $200 million in fines and forfeitures to the SEC and DOJ.

24. As a result of its prior agreements with the US government, Zimmer Biomet cannot deny its illegal conduct. In both the 2012 and 2017 deferred prosecution agreements with the DOJ, Zimmer Biomet agreed that it would not "make any public statement, in litigation or otherwise, contradicting the acceptance of responsibility" for its illegal conduct and the conduct of its agents. Zimmer Biomet is also bound by the SEC agreements that resulted in final administrative orders.

*Zimmer Biomet's Conduct in Mexico*

25. In Mexico, between at least 2008 and 2013, Zimmer Biomet knowingly paid bribes to Mexican government officials to facilitate the sale of products to and through IMSS.

26. From 2008 through 2013, Zimmer Biomet paid almost $1 million to its Mexican agents, who acted as bagmen for passing on bribes to Mexican government officials. The bribes were paid so Zimmer Biomet could illegally smuggle unregistered medical products into Mexico so the unregistered products could be sold to IMSS.

27. Zimmer Biomet was informed the conduct was illegal, but decided to continue the profitable scheme.

28. Zimmer Biomet knew of, and directly supported, the illegal activities of its wholly-owned subsidiaries and its agents throughout the world and specifically including Mexico. In the alternative, Zimmer Biomet acted with willful ignorance of the bribery scheme, using its wholly-owned subsidiaries and its agents to obscure illicit payments that benefited Zimmer Biomet.

29. To control the international scheme, Zimmer Biomet personnel communicated with Zimmer Biomet personnel around the world, including within Mexico. Zimmer Biomet personnel would also travel to and from Mexico in support of the scheme.

*Effect on IMSS*

30. Zimmer Biomet made millions from its bribes in Mexico. Zimmer Biomet has confessed to *directly* receiving $2,652,100 in illicit profits through its Mexican bribery scheme, but Zimmer Biomet received far more indirectly. Zimmer Biomet's illegal conduct voids all of its IMSS contracts from 2008 to the present.

31. To obtain IMSS contracts, Zimmer Biomet had to represent that it had and was complying with all legal requirements for the sale of medical equipment to IMSS and within Mexico. Zimmer Biomet made the required representations, but its statements were manifestly false. IMSS relied on Zimmer Biomet's false, material statements and omissions in order to consummate business transactions with Zimmer Biomet.

32. In addition, Zimmer Biomet bribed Mexican government officials so Zimmer Biomet could smuggle unregistered medical products into Mexico and sell the unregistered medical products to IMSS. The sale of unregistered devices was and is illegal in Mexico. IMSS could not have knowingly purchased unregistered medical devices.

33. IMSS' reliance on Zimmer Biomet's false representations lasted longer than the bribes and illegal importation of medical devices. With each additional contract, Zimmer Biomet had to represent that it had and would comply with Mexican law. Following the first bribes and illegally imported products, those representations were false. Absent the false representations, IMSS would have been legally barred from contracting with Zimmer Biomet. Therefore, IMSS relied on Zimmer Biomet's representations when approving contracts for the purchase of Zimmer Biomet products well after the expressly illicit conduct set out above.

34. Pursuant to Mexican law, Zimmer Biomet's fraud and its breaches of the Mexican government procurement procedures voids Zimmer Biomet's contracts, and therefore, Zimmer

Biomet should be required to return all proceeds received from IMSS, retaining at most the actual production cost of the equipment it sold.

## CLAIMS FOR RELIEF

35. Based on the foregoing facts, IMSS raises the following claims for relief:

*First Claim for Relief – Fraud*

36. Zimmer Biomet's false, material statements and omissions to IMSS were fraudulent.

37. IMSS relied on Zimmer Biomet's false, material statements and omissions in order to consummate business transactions with Zimmer Biomet. Absent the false claims, IMSS would have been barred from contracting with Zimmer Biomet.

38. IMSS is entitled to avoidance of all contracts tainted by the fraud and a recovery of all payments made pursuant to those contracts. This relief is the same whether this claim is made pursuant to United States or Mexican law.

*Second Claim for Relief – Violation of Articles 50 and 60 of the Law of Acquisitions, Leases and Services of the Public Sector (under Mexican law)*

39. Articles 50 and 60 of the Mexican Law of Acquisitions, Leases and Services of the Public Sector prohibit bribes to public sector officials and misrepresentation made to induce issuance of government contracts.

40. IMSS is entitled to avoidance of the underlying contracts and return of all compensation paid to Zimmer Biomet.

*Third Claim for Relief – Breach of Contract (under Mexican law)*

41. Zimmer Biomet breached its contractual duties to IMSS by failing to disclose its corrupt payments. Specifically, Zimmer Biomet contractually represented that it was in compliance

with Mexican law; namely, Articles 50 and 60 of the Law of Acquisitions, Leases and Services of the Public Sector.

42. Zimmer Biomet independently breached the terms of the IMSS contracts by paying bribes to corrupt officials.

43. Further, by bribing IMSS officials and misrepresenting that activity in its contracts and invoicing practices, Zimmer Biomet violated Article 8 of the Mexican Civil Code, which expressly prohibits fraud in business contracts.

## JURY TRIAL DEMAND

44. IMSS requests a trial by jury.

## PRAYER FOR RELIEF

45. IMSS prays that this Court award it all the relief to which it is entitled under law or equity.

Dated: January 30, 2020

Respectfully submitted,

By: _____
Mark Maney
Attorney-in-Charge

Maney & González-Félix PC
Texas Bar No. 12898200
Federal ID: 11815
712 Main Street
Suite 2100
Houston, Texas 77002
Telephone: 713.806.2500
mmaney@maneylaw.com

ATTORNEYS FOR IMSS