UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| INSTITUTO MEXICANO DEL SEGURO SOCIAL,<br><br>                    Plaintiff,<br><br>    v.<br><br>ZIMMER BIOMET HOLDINGS, INC.,<br><br>                    Defendant. | CAUSE NO. 3:20-cv-99 DRL-MGG |

<u>OPINION & ORDER</u>

The Instituto Mexicano del Seguro Social (IMSS) manages the purchase of medical supplies for the Mexican government. IMSS alleges that Zimmer Biomet Holdings, Inc. bribed Mexican government officials to facilitate the sale of its medical device products in Mexico. Zimmer Biomet now moves to dismiss this suit on grounds of *forum non conveniens*, saying the case should be litigated in Mexico. The court agrees and grants the motion.

BACKGROUND

IMSS alleges that, from 2008 to 2013, Zimmer Biomet knowingly paid bribes to Mexican government officials to facilitate the sale of its products to and through IMSS. These bribes allegedly facilitated the importation of unregistered medical device products into Mexico. IMSS says bribes occurred through Zimmer Biomet's indirectly-owned subsidiary in Mexico, Biomet 3i Mexico, with Zimmer Biomet personnel traveling into the country to support the scheme, or through Mexican agents who acted as bagmen for passing on bribes to Mexican government officials.

The complaint alleges that Zimmer Biomet engaged in an international bribery scheme orchestrated from its corporate offices in Indiana. The scheme thus included bribes both in the United States and Mexico. IMSS alleges that Zimmer Biomet has entered into deferred prosecution agreements with the U.S. Department of Justice and settlement agreements with the Securities and Exchange Commission regarding these schemes. IMSS asserts that, under Mexican law, it cannot

purchase unregistered medical products and thus wouldn't have purchased medical devices from Zimmer Biomet if it had known of the bribes here. IMSS also claims that, because of the bribery scheme, various contracts from 2008 through the present are voidable.

DISCUSSION

The court may dismiss or transfer a case when considerations of economy and convenience demonstrate another forum is better suited to hear it. *Am. Dredging Co. v. Miller*, 510 U.S. 443, 447-48 (1994). This doctrine of *forum non conveniens* applies "when an alternative forum has jurisdiction to hear [a] case, and when trial in the chosen forum would establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience, or when the chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981) (quoting *Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947)) (quotations omitted); *see Am. Dredging*, 510 U.S. at 447-48.

The court ordinarily defers to the plaintiff's choice of forum, *Kamel v. Hill-Rom Co., Inc.*, 108 F.3d 799, 803 (7th Cir. 1997), though a foreign plaintiff's choice deserves less deference, *Piper Aircraft*, 454 U.S. at 256; *Kamel*, 108 F.3d at 803, a turnabout mitigated by the United Nations Convention Against Corruption here. Zimmer Biomet carries the burden of overcoming this presumption favoring a plaintiff's choice, and it is often a "heavy" one. *In re Hudson*, 710 F.3d 716, 718 (7th Cir. 2013); *see Deb v. SIRVA, Inc.*, 832 F.3d 800, 805 (7th Cir. 2016) (*forum non conveniens* is an "exceptional" doctrine). A plaintiff's choice of forum shouldn't be disturbed unless the balance of factors tilts strongly in the defendant's favor. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947); *Deb*, 832 F.3d at 806.

The court may dismiss an action under *forum non conveniens* when (1) an alternative forum is available and adequate, and (2) dismissal would serve both the private interests of the parties and the public interests of the forums, *see Stroitelstvo Bulgaria Ltd. v. Bulgarian-American Enterprise Fund*, 589

F.3d 417, 421, 424 (7th Cir. 2009), though the overriding focus remains convenience, *Piper Aircraft*, 454 U.S. at 241. In rare cases when the plaintiff wants to sue in the defendant's home jurisdiction and the defendant wants to be sued in the plaintiff's home jurisdiction, as here, the court "weigh[s] . . . the relative advantages and disadvantages of the alternative forums" because there is "no prima facie reason to think a plaintiff [is being] discriminated against by being sent to his home court or a defendant [is being] discriminated against by being forced to stay and defend in his home court." *Abad v. Bayer Corp.*, 563 F.3d 663, 671 (7th Cir. 2009).

    A.    *Mexico is an Available and Adequate Alternative Forum.*

An alternative forum must be available and adequate. *Stroitelstvo*, 589 F.3d at 421. A forum is "available" if "all of the parties are amenable to process and within the forum's jurisdiction." *Id.* This requirement may be satisfied by a party consenting to jurisdiction. *See, e.g.*, *Fischer v. Magyar Allamvasutak Zrt.*, 777 F.3d 847, 867 (7th Cir. 2015) (Hungarian courts available where non-Hungarian party consented to jurisdiction in Hungary); *Stroitelstvo*, 589 F.3d at 421 (Bulgarian courts available when bank headquartered in Chicago with office in Bulgaria consented to jurisdiction in Bulgaria); *In re Factor VIII or IX Concentrate Blood Prods. Lit.*, 484 F.3d 951, 957 (7th Cir. 2007) (forum available when dismissal conditioned on defendant's acceptance of service in U.K.).

Here, Zimmer Biomet consented to jurisdiction in Mexico through its vice president and associated general counsel. *See Associacao Brasileira de Medicina de Grupo v. Stryker Corp.*, 891 F.3d 615, 621 (6th Cir. 2018) (declarations that one will accept service in alternative forum are legally binding); *see also Fischer*, 777 F.3d at 867 (relying on declaration by defendant's officer consenting to jurisdiction). Zimmer Biomet says it won't contest service of process in Mexico. To ensure Mexico proves an adequate forum, the court may order Zimmer Biomet to consent to jurisdiction in Mexico, accept service of process, and satisfy a final judgment rendered by a Mexican court. *See In re Factor VIII*, 408 F. Supp.2d 569, 591 (N.D. Ill. 2006), *aff'd*, 484 F.3d at 957 (7th Cir. 2007).

3

IMSS concedes that Mexican courts are competent to hear complex commercial matters but contests their availability nonetheless, though its analysis seems more aptly aimed at the forum's adequacy. IMSS relies on Mexican attorney Sergio Antonio Linares Pérez who says Mexican courts historically haven't held foreign parents of Mexican corporations liable based on their control of subsidiaries in Mexico. Yet Mr. Pérez concedes that Mexican courts recognize consents to jurisdiction. Because the Mexican courts would have jurisdiction over this matter and the parties are amenable to process within Mexico following Zimmer Biomet's consent, Mexican forums are available.

A forum is "adequate" "when the parties will not be deprived of all remedies or treated unfairly." *Kamel*, 108 F.3d at 803. To find an alternative forum inadequate, the court must conclude that "the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all." *Fischer*, 777 F.3d at 867 (quoting *Piper Aircraft*, 454 U.S. at 254). An unfavorable change in law alone doesn't make a forum inadequate. *In re Factor VIII*, 484 F.3d at 956.

José Ramón Cossío Diaz, a former associate justice of the Mexico Supreme Court of Justice and current professor of constitutional law at El Colegio de México, says Zimmer Biomet's consent will be upheld by Mexican courts and that IMSS, as a decentralized body of the Federal Public Administration in Mexico, is subject to Mexico's federal jurisdiction. Based on his reading of the complaint, he says the executed contracts took place under the Law of Acquisitions, Leases and Services of the Public Sector (Law of Acquisitions), and that Article 85 of such law says disputes will be resolved by Mexico federal courts. Ultimately, he opines that "the claims filed by the IMSS against Zimmer Biomet may have been filed, processed and properly resolved with the Mexican competent federal authorities." The court gives this opinion substantial weight in underscoring a Mexican venue's availability and adequacy. *See Kamel*, 108 F.3d at 803 (relying on expert affidavit explaining that Saudi law recognizes consents).

Both the claims under Mexico's Law of Acquisitions (count II) and breach of contract (count III) are asserted under Mexican law, so any remedy would be available in Mexico. IMSS says the remedy for fraud (count I) is the same under American and Mexican law. Justice Cossío Diaz says Mexican courts are adequate: "In my opinion, the Mexican federal courts are qualified and empowered to hear the claims for relief sought by the IMSS, both regarding the compliance with the covenants and everything related to the corruption facts." He says Mexican courts have the power to provide relief under Articles 50 and 60 of the Law of Acquisitions, and that this law also grants agencies the power to rescind contracts administratively when the provider breaches its obligations.

IMSS says the forum is inadequate because Mexican courts would be reluctant to hold Zimmer Biomet accountable for its subsidiary's acts, but the court doesn't equate this type of reluctance with inadequacy. Just because Mexican law or a Mexican court may prove more circumspect about the claims here is a measure of the merits, a measure of standards or weight, not a measure of whether the remedies would be so clearly inadequate such as to be no remedy at all. *See, e.g.*, *Fischer*, 777 F.3d at 861 (finding Hungarian courts adequate and saying "the relief need not be as comprehensive or as favorable as a plaintiff might obtain in an American court"); *In re Factor VIII*, 484 F.3d at 956 (finding British forums adequate though they had less favorable standards of causation). Indiana law would also present obstacles to recovery; for instance, IMSS would need to pierce the corporate veil between Zimmer Biomet and its subsidiary or establishing overwhelming control, but that hurdle wouldn't suggest Indiana law must accordingly be viewed as inadequate.

In sum, as many other courts have held, a Mexican court here is an adequate forum. *See, e.g.*, *Gonzalez-Servin v. Ford Motor Co.*, 662 F.3d 931, 933 (7th Cir. 2011); *Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 672 (5th Cir. 2003) ("The fact that Mexico provides a wrongful death cause of action, albeit with severe damage caps, makes the country an adequate forum."); *Gonzalez v. Chrysler Corp.*, 301 F.3d 377, 383 (5th Cir. 2002) ("We . . . are unwilling to hold as a legal principle that

Mexico offers an inadequate forum simply because it does not make economic sense for [plaintiff] to file this lawsuit in Mexico."). This conclusion supports the case's dismissal in favor of a Mexican forum.

      B.      *The Private Interests of the Parties Favor Dismissal.*

The court next weighs the private interests of the parties. *Stroitelsvo*, 589 F.3d at 424-25. Courts weigh the following private interest factors: "(1) the relative ease of access to sources of proof; (2) availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; (3) possibility of view of premises, if view would be appropriate to the action; (4) and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Clerides v. Boeing Co.*, 534 F.3d 623, 628 (7th Cir. 2008) (quoting *Gilbert*, 330 U.S. at 508).

Mexico has easier access to witnesses. More witnesses reside in Mexico than the United States. IMSS is a Mexican agency, so its witnesses will be materially located in Mexico. IMSS alleges that Biomet 3i was the historically bad actor, and Biomet 3i Mexico is in Mexico. IMSS says the bribery scheme was carried out by unspecified "Mexican agents," thus pointing to Mexico as the better forum. IMSS says the bribes were paid to Mexican government officials who likewise reside in Mexico. To be sure, there will be witnesses from the United States. Zimmer Biomet is an Indiana corporation, and witnesses will likely include unnamed Zimmer Biomet personnel. But the number of witnesses in Mexico dwarfs those here.

IMSS counters that Zimmer Biomet hasn't provided names of specific witnesses in Mexico, but Zimmer Biomet wasn't required to do so. *See Piper Aircraft*, 454 U.S. at 258 (defendants need not "submit affidavits identifying the witnesses they would call and the testimony these witnesses would provide if the trial were held in the alternative forum. . . . Requiring extensive investigation would

6

defeat the purpose of their motion"). In the same vein, IMSS hasn't identified any witnesses in Indiana. The nature of the allegations here clarifies the scope of potential witnesses.

Similarly, the likely relevant documentary evidence favors a Mexican forum. The alleged bribes were made to Mexican officials by Mexican agents, so any documentary evidence (if any exist of such a scheme) is more likely in Mexico. IMSS's and Biomet 3i's documents are likewise in Mexico. Much of the relevant documents and testimony will be in Spanish. *See Fischer*, 777 F.3d at 870 ("it seems obvious that otherwise heavy translation burdens will be greatly reduced if the case were litigated in Hungary"). Transportation of this evidence here and translation would be expensive. *See Stroitelstvo*, 589 F.3d at 425 ("transporting all of the evidence and witnesses to Chicago would be unnecessarily expensive" and "[t]ranslating all of the Bulgarian discovery documents into English for a U.S. court would also be costly").

That said, the SEC and DOJ investigation reports of Zimmer Biomet in the English language likely contain evidence that could be used in IMSS's suit, though the reports seem fewer in number and secondary in relevance to documentary evidence in Mexico specific to the alleged bribery activity. The documents central to this dispute are the contracts in Spanish entered into between IMSS and Biomet 3i Mexico, or the evidence concerning bribes for these medical device sales. Mr. Pérez opines that discovery requests would be more quickly transported from Mexico to the United States than *vice versa* given response times under the Hague Convention, but that international exchange and burden are inherent prerequisites to discovery in this case whether venued here or there.

IMSS says Zimmer Biomet is trying to avoid discovery because in Mexico parties are required to utilize exclusively the evidence in their possession at the time of filing suit, whereas a court here will give the parties the vehicle of discovery to develop more evidence. Arguments that the United States provides more extensive discovery than alternative forums have been rejected in

the *forum non conveniens* analysis when the other forum is adequate. *See, e.g.*, *Piper Aircraft*, 454 U.S. at 252 n.18 (noting that "discovery is more extensive in America than in foreign courts"); *GoldenTree Asset Mgmt. LP v. BNP Paribas S.A.*, 64 F. Supp.3d 1179, 1193 (N.D. Ill. 2014) (rejecting argument that Germany provided inadequate forum because of Germany's limitations on discovery). Moreover, even IMSS recognizes that the judicial system in Mexico permits parties to use evidence discovered after the complaint is filed, particularly when the plaintiff lacked knowledge it existed before.

The ability to secure attendance of witnesses favors dismissal. The COVID-19 pandemic is common to both Mexico and the United States, which may prevent voluntary testimony due to travel restrictions. Accordingly, outside technological alternatives to in-person questioning, easing the burdens of travel has greater importance, and Mexico is better suited for that than the United States given the location of witnesses. Mexican courts likewise may compel live testimony from witnesses located in Mexico, whereas the United States subpoena power is powerless for Mexican citizens. Federal Rule of Civil Procedure 45(b)(2) authorizes subpoenas for witnesses located in the United States, and 28 U.S.C. § 1783 authorizes service of subpoenas for United States nationals or residents located in a foreign country. IMSS representatives, Biomet 3i employees, and Mexican government officials who received bribes are unlikely to fall within the ambit of this otherwise facile service system. Sure, issues may arise with witnesses traveling from the United States to Mexico; but because most witnesses will be in Mexico, this proves the lesser concern. The costs of travel also will likely be less if trial is in Mexico.

The court has weighed additional factors. IMSS's claims are rooted in Mexican law, the contract was between Mexican parties, and the injury took place in Mexico. Even here then, the case will likely require knowledge and application of Mexican law. *See Kamel*, 108 F.3d at 805 (Indiana

uses "place of injury" for tort choice-of-law and a "most significant relationship" test for contract choice-of-law). On balance, a Mexican court is better suited to apply such law.

IMSS argues that Zimmer Biomet is forum shopping and trying to delay trial and avoid application of *res judicata*. *See, e.g., Iragorri v. United Techs. Corp.*, 274 F.3d 65, 75 (2d Cir. 2001) ("Courts should be mindful that, just as plaintiffs sometimes choose a forum for forum-shopping reasons, defendants also may move for dismissal under the doctrine of *forum non conveniens* not because of genuine concern with convenience but because of similar forum-shopping reasons."). That said, forum shopping "ordinarily should not enter into a trial court's analysis of the private interests." *Piper Aircraft*, 454 U.S. at 252 n.19. Indeed, "[i]f the defendant is able to overcome the presumption in favor of plaintiff by showing that trial in the chosen forum would be unnecessarily burdensome, dismissal is appropriate—regardless of the fact that defendant may also be motivated by a desire to obtain a more favorable forum." *Id.* Accordingly, IMSS's argument regarding Zimmer Biomet's forum shopping isn't altogether persuasive here, given the overwhelming private interests that are promoted by a Mexican venue.

IMSS says Zimmer Biomet wants to delay trial. *See, e.g., Boosey & Hawkes Music Publishers, Ltd. v. Walt Disney Co.*, 145 F.3d 481, 492 (2d Cir. 1998) (considering defendant's motive to delay). Attorney Pérez says Mexican courts are slower than United States courts in executing cases, and trial in Mexico could take as many as 15 years; but he bases this estimate on his own experience without the support of sound empirical research. Moreover, it seems soundly undercut by other authorities, *see DTEX, LLC v. BBVA Bancomer, S.A.*, 508 F.3d 785, 797-98, 801 (5th Cir. 2007) (discrediting claim that defendant sought to move trial to Mexico for delay); *see also* ECF 17-1 ¶ 41 (conceding that the average dispute in Mexico takes four years to resolve, including appeals), or by procedures decidedly shorter than the federal system in the United States (*e.g.*, appeal submission). It also

ignores that Mexico accepts and to some extent encourages alternative dispute resolution, so a case may be resolved without a trial. Any delay from COVID-19 would occur in either country.

IMSS next says Zimmer Biomet wants to avoid application of *res judicata* regarding the SEC cease-and-desist order and DOJ deferred prosecution agreement. To be sure, the SEC and DOJ documents might be offered as evidence in Mexico, given Mexico's evidence rules, but these documents wouldn't likely trigger *res judicata* rules here in the United States such that the parties have truly lost any benefit merely because Mexico doesn't recognize the doctrine at all, if correct. The issue here is a specific breach of contract and fraud. The SEC and DOJ proceedings didn't deal with this specific breach of contract and fraud allegation.

That said, though the court views IMSS's choice here favorably, particularly because it is Zimmer Biomet's home jurisdiction, *see Shi v. New Mighty U.S. Trust*, 918 F.3d 944, 950 (D.C. Cir. 2019); *Stryker*, 891 F.3d at 619; *Reid-Walen v. Hansen*, 933 F.2d 139, 1395 (8th Cir. 1991), the private interest factors tilt strongly toward dismissal.

    C.    *The Public Interest Factors Favor Dismissal.*

The court next considers the public interest factors. These factors include "(1) the administrative difficulties stemming from court congestion; (2) the local interest in having localized disputes decided at home; (3) the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; (4) the avoidance of unnecessary problems in conflicts of laws or in the application of foreign law; and (5) the unfairness of burdening citizens in an unrelated forum with jury duty." *Stroitelstvo*, 589 F.3d at 425.

Administrative congestion remains a reality in either forum. That said, Mexican courts would face a lesser burden in obtaining U.S. documents and translating them into Spanish than the opposite, particularly because most evidence exists in Mexico. COVID-19 has made transportation more difficult, though this is common in both forums, and both forums have slowed their judicial

operations in response. According to Mr. Pérez, this district has about one-third the caseload of its Mexican counterpart, which based on cold statistics alone might suggest a more convenient forum here but for the practical administration and conduct of discovery.

Furthermore, Mexico has a much greater interest in this litigation. IMSS, a Mexican government agency, alleges violations of Mexican law from the sale of medical devices in Mexico that bribes of Mexican customs officials facilitated. The contract at issue was formed in Mexico. Mexican courts have an inherent interest in enforcing Mexican law, in hearing disputes regarding its own government, and in hearing disputes regarding corruption of Mexican officials. Indeed, it would be a rare case in which Mexico had any greater interest to hear and decide a case than this one.

To be sure, Zimmer Biomet is headquartered in Indiana and its so-alleged worldwide bribery scheme was orchestrated here, but Indiana isn't the real focus of this litigation. No person or entity in Indiana is alleged to have been harmed. Though the United States has an interest in upholding international law norms, *see Fischer*, 777 F.3d at 871, Mexico's interest in enforcing its own law and rooting out corruption in its own government is much greater. *See, e.g.*, *Stroitelstvo*, 589 F.3d at 425 ("Bulgaria has an equal if not greater interest in guarding against the extortion of its own businesses").

Mexican law governs this dispute, with IMSS alleging violations of Mexico's Law of Acquisitions and breach of contract under Mexican law. The fraud claim likely requires application of Mexican law.[1] This favors dismissal. *See, e.g.*, *Fischer*, 777 F.3d at 871 ("a Hungarian court would be far better able to apply its own law than any United States court would be"); *Abad*, 563 F.3d at 671 (affirming dismissal in part because "an Argentine court is the more competent maker of Argentine

---

[1] Indiana follows the *lex loci delicti* doctrine, applying the law of the place where the tort is committed. *See Allen v. Great Am. Res. Ins. Co.*, 766 N.E.2d 1157, 1164 (Ind. 2002). A tort is said to occur "in the state where the last event necessary to make an actor liable for the alleged wrong takes place." *Id.* The "last event" necessary to establish a fraud claim is injury, *id.* at 1164-65, and the injury here allegedly occurred in Mexico. So, on this preliminary record, the case would likely demand the application of Mexican law.

law"); *U.S.O. Corp. v. Mizuho Holding Co.*, 547 F.3d 749, 755 (7th Cir. 2008) ("a Japanese court is more at home with Japanese law and Japanese firms than an American court would be"). This is especially true when the foreign law is a civil law system—like Mexico's—as opposed to the common law system used here. *See Fischer*, 777 F.3d at 871 ("The application of foreign law—particularly that of a civil law system—favors dismissal in favor of a Hungarian forum.").

A jury here is highly attenuated from the incidents alleged in this litigation. Indeed, "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Am. Dredging Co.*, 510 U.S. at 448 (quoting *Gilbert*, 330 U.S. at 508). The only link of this litigation to this district is Zimmer Biomet's headquarters here. There are much stronger ties to Mexico. *See U.S.O. Corp.*, 547 F.3d at 755 ("the local interest is that of Japan; to burden Americans with jury duty to resolve an intramural Japanese dispute would be gratuitous"). The public interest factors thus overwhelmingly support this case's dismissal in favor of a Mexican venue.

        D.    *The United Nations Convention Against Corruption Treaty Does Not Supersede the Forum Non Conveniens Doctrine.*

IMSS subverts the *forum non conveniens* doctrine by arguing that the United States and Mexico signed the superseding United Nations Convention Against Corruption treaty. *See* United Nations Convention Against Corruption (Dec. 9, 2003) (UNCAC).[2] This treaty requires each signatory state "in accordance with its domestic law" to "[t]ake such measures as may be necessary to permit another State Party to initiate civil action in its courts to establish title to or ownership of property acquired through the commission of an offence established in accordance with this Convention" or "to order those who have committed offences established in accordance with this Convention to pay compensation or damages to another State Party that has been harmed by such offences." *Id.* Art. 53.

---

[2] *See* https://www.unodc.org/documents/treaties/UNCAC/Publications/Convention/08-50026_E.pdf.

No court has addressed whether UNCAC precludes the operation of *forum non conveniens*. The court first examines the treaty's text in context. *See Abbott v. Abbott*, 560 U.S. 1, 10 (2010). IMSS is a "State Party," this is a "civil action," IMSS is seeking to establish ownership of property, and IMSS says Zimmer Biomet acquired property through bribery—a corrupt act under UNCAC. That said, by its express terms, the treaty makes IMSS's right to bring suit subject to U.S. "domestic law." Nothing within its plain language seeks to accomplish the opposite goal of undoing U.S. domestic law in such a way as to secure in every case the right to bring suit here, not least in a case where Mexico has a manifest interest in protecting its government from alleged foreign corporate influence.

In addition, UNCAC only requires United States courts to "take such measures as may be necessary" for another state party to initiate an action. IMSS had that right and exercised that right—consistent with UNCAC. IMSS filed suit here, and the court heard its concerns initially to determine the proper venue for further litigation. In applying *forum non conveniens*, the court hasn't interfered with IMSS's ability to commence an action here.

The *forum non conveniens* analysis requires that there be an alternative forum before dismissal, ensuring that any aggrieved party has a potential remedy for an alleged violation. Safeguards ensure IMSS has a forum to bring suit. In other words, it isn't "necessary" for Mexico to bring suit here to enforce its rights.

Courts interpreting similar treaty provisions have held likewise. *See, e.g.*, *In re Bridgestone*, 190 F. Supp.2d 1125, 1136 (S.D. Ind. 2002) (treaty between U.S. and Venezuela required only that "expatriate U.S. nationals and treaty nationals residing in their home countries are entitled to the same deference on their choice of forum, with the consideration that suing in a United States forum while residing in a foreign country is less likely to be convenient"), *aff'd* 344 F.3d 648, 653 (7th Cir. 2003) (calling analysis "reasoned and responsible"); *see also Blanco v. Blanco*, 997 F.2d 974, 981 (2d Cir.

13

1993) ("when a treaty with a foreign nation accords its nationals access to our courts equivalent to that provided American citizens, identical *forum non conveniens* standards must be applied to such nationals by American courts"). The court has followed UNCAC's mandate here; still, *forum non conveniens* remains a proper subject for deliberation under federal law. Deciding that issue protects "U.S. courts from a glut of foreign cases while continuing to respect our treaty obligations." *In re Bridgestone*, 190 F. Supp.2d at 1136.

CONCLUSION

With Zimmer Biomet's consent, Mexico proves an available and adequate alternative forum for this litigation, and both the private and public interest factors favor trial in Mexico. Because the court dismisses the action under *forum non conveniens*, the court doesn't address Zimmer Biomet's arguments that IMSS's complaint should be dismissed for failure to state a claim or failure to plead with particularity.

Accordingly, the court GRANTS Zimmer Biomet's motion to dismiss (ECF 13) under *forum non conveniens* and, to ensure the availability of Mexico's court and consistent with Zimmer Biomet's declaration, ORDERS Zimmer Biomet to agree to accept service in actions brought by IMSS arising from this action in a Mexican court and not to contest jurisdiction and ORDERS Zimmer Biomet to satisfy a final judgment rendered by a court of Mexico. With the case so dismissed, this order terminates it.

SO ORDERED.

January 5, 2021                                          *s/ Damon R. Leichty*
                                                                             Judge, United States District Court